**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**ISCAN2D TECHNOLOGIES, LLC,**

**Plaintiff,**

**v.**

**APPLE INC.,**

**Defendant.**

**CIVIL ACTION NO. 1:25-cv-1794**

**JURY TRIAL DEMANDED**

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff iScan2D Technologies, LLC ("Plaintiff" or "iScan2D") files this complaint against Apple Inc. ("Apple") for infringement of U.S. Patent Nos. 11,664,123 and 12,230,394 and alleges as follows:

## PARTIES

1. Plaintiff is a Connecticut limited liability company with a principal place of business at 2389 Main Street, Ste 100, Glastonbury, CT 06033.

2. On information and belief, Defendant is a publicly traded corporation organized under the laws of the State of California, with its principal place of business at One Apple Park Way, Cupertino, CA 95014. Defendant may be served through its registered agent in the State of Texas at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, 35 U.S.C. § 271 et seq. Plaintiff is seeking damages, as well as attorney fees and costs.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents).

5. This Court has personal jurisdiction over Defendant. Defendant has continuous and systematic business contacts with the State of Texas. Defendant transacts business within this District and elsewhere in the State of Texas and has appointed an agent for service of process in Texas. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of iScan2D's patents in this District and elsewhere in the State of Texas.

6. Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising its products and services in the State of Texas and in this District. Defendant has purposefully and voluntarily made its business products and services, including the infringing systems, available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and/or used by consumers in this District.

7. On information and belief, Defendant maintains physical brick-and-mortar business locations in the State of Texas and within this District, retains employees specifically in this District for the purpose of servicing customers in this District, and generates substantial revenues from its business activities in this District. Such places of business include at least at 12545 Riata Vista Cir., Austin, Texas 78727 and 12801 Delcour Dr. Austin, Texas 78727.







*See* Google Maps

8. On information and belief, Apple has a substantial presence in the State of Texas and within this District, as exemplified by the LinkedIn Profile Page for Apple, which indicates there are 141 employees of Apple residing in the greater Austin area.




*See* Apple LinkedIn Profile Page, at [www.linkedin.com/company/apple/people/.](http://www.linkedin.com/company/apple/people/)

9. Still further, Apple maintains multiple physical business locations within this District, including but not limited to its Apple Stores located at the Domain in Austin, Barton Creek in Austin, North Star in San Antonio, and La Cantera in San Antonio.







*See* Google Maps.

10. Venue is proper in the Western District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b). As noted above, Defendant maintains a regular and established business presence in this District.

## PATENTS-IN-SUIT

11. Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent No. 11,664,123 (hereinafter "the '123 Patent") and U.S. Patent No. 12,230,394 (hereinafter "the '394

Patent”). The ’123 Patent and the ’394 Patent are collectively referred to herein as the “Asserted Patents.”

12. The patent application that issued as the ’394 Patent is a continuation of the patent application that issued as the ’123 Patent. Thus, the ’394 Patent and the ’123 Patent share a common specification.

13. The ’123 Patent is attached as **Exhibit A** and the ’394 Patent is attached as **Exhibit B**.

14. The Asserted Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

15. Plaintiff possesses all rights of recovery under the Asserted Patents, including the exclusive right to recover for past, present and future infringement.

16. Plaintiff iScan2D Technologies, LLC is a technology company founded in 2011 by the inventor of the Asserted Patents, Sean McKirdy. iScan2D was established with the mission of developing innovative technologies and intellectual property in the fields of mobile health and fitness tracking.

17. Mr. McKirdy has held various positions in the aerospace and life sciences industries, including roles as an R&D Engineer and Business Unit Manager, where he gained extensive technical and managerial expertise.

18. In 2012, iScan2D entered into a strategic partnership with MYE Technologies, Inc. ("MYE"), a California-based leader in wireless audio and fitness technology solutions. This collaboration marked the beginning of a series of innovations that were successfully developed and commercialized in both the health & fitness and consumer healthcare markets.

19. In 2012, iScan2D and MYE introduced its first commercial product, a proprietary digital QR code-based cardio exercise equipment data acquisition system. This groundbreaking solution enabled universal compatibility by capturing workout data from any make or model of exercise machine, thereby creating a standardized method of tracking exercise performance.

20. In 2013, iScan2D developed a first-of-its-kind blood glucose monitoring solution capable of interfacing with leading glucose meters. The system allowed encrypted blood test results to be securely transferred from any mobile device to designated web portals via existing QR code scanning applications.

21. In 2016, in partnership with MYE, iScan2D co-developed an integrated health club workout tracking system and health kiosk. The system was successfully deployed at Revelife gym, a California fitness center, and represented a pioneering step in combining exercise data collection with interactive wellness technology. Video of the technology can be seen here: https://iscanip.com/case-study/.

22. In 2019, expanding on prior innovations, iScan2D and MYE co-developed the BodyScript Ascend health kiosk, now used in leading medically integrated health centers nationwide. The kiosk empowers members to independently conduct self-assessments measuring body weight, body mass index (BMI), hydration levels, and body fat percentage: https://bodyscript.com.

23. Through these innovations, iScan2D has consistently demonstrated its ability to develop and commercialize transformative technologies that shape the future of health, fitness, and wellness tracking.

24. The ’123 Patent contains twenty claims including two independent claims (claims 1 and 11) and eighteen dependent claims.

25. The ’394 Patent contains twenty claims including two independent claims (claims 1 and 11) and eighteen dependent claims.

26. The priority date of the Asserted Patents is at least as early August 5, 2011. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

27. Plaintiff alleges infringement on the part of Defendant of the Asserted Patents.

28. As noted, the claims of the Asserted Patents have a priority date at least as early as August 5, 2011. The inventions as claimed solve long standing problems in wearable device pairing with mobile phones and secure communication that existed in the art as of the date of invention. In particular, wearable devices and smartphones required cumbersome manual pairing processes that were prone to user input error, lacked interoperability across platforms, and exposed users to security vulnerabilities.

29. The claims of the Asserted Patents overcome these deficiencies existing in the art as of the date of invention, and comprise non-conventional, novel, technical approaches that transform the inventions as claimed into substantially more than mere abstract ideas.

30. For example, the inventions as claimed “allow a user to authenticate themselves on the system by scanning the media which can be linked to a specific machine (example: a barcode that has a wifi MAC address linked to the display electronics of the machine).” *See* ’394 Patent at 36:44-48. The “specific type of machine” from which pairing data is captured (and for which a color coded machine-readable code that is generated) can be, for example, “a glucometer (or any other biomonitoring device such as . . . a watch device that captures biometric data, pedometer, etc.).” *Id.* at 45-48. Thus, the inventions as claimed allow for the use of non-human machine

readable codes (scannable media) for pairing wearable devices (e.g., an Apple Watch) with smartphones (e.g., an Apple iPhone).

31. As a further example of the non-conventional, novel, technical approaches that transform the inventions as claimed into substantially more than mere abstract ideas, the inventions as claimed utilize colors as part of the machine readable code (scannable media), that allow for a higher amount of data that can be included in the machine readable code. *See* '394 Patent at 28:38-44. The machine readable code can also include a combination of colors to further enhance the amount of data capture. *Id.* at 36:18-21.

32. The claims of the Asserted Patents are not drawn to laws of nature, natural phenomena, or abstract ideas. The specific combinations of elements, as recited in the claims, were not conventional or routine at the time of the invention.

33. The improvements disclosed in the Asserted Patents and the feature recitations in the claims of the Asserted Patents are not those that would be well-understood, routine, or conventional to one of ordinary skill in the art at the time of the invention.

34. The Asserted Patents are pioneering patents, and have been cited as relevant prior art in over 200 subsequent United States Patent Applications, including five United States Patent Applications assigned to Defendant Apple Inc., as well as United States Patent Applications assigned to other technology and business leaders such as Microsoft Corporation, Google Inc., Ebay Inc., Samsung Electronics Co., Ltd., Intel Corporation, Fuji Xerox Co., Ltd., Xerox Corporation, Sony Corporation, The Boeing Company, Verizon, GM Global Technology Operations LLC, Hewlett-Packard Development Company, L.P., Redbox Digital Entertainment Services, LLC, Siemens Industry Inc., Nokia Corporation, Sony Corporation, Capital One Services, LLC, Goldman Sachs & Co. LLC, General Electric Company, Bank of America

Corporation, Rockwell Automation Technologies, Wal-Mart Stores, Inc., Under Armour, Inc., and The Coca-Cola Company.

35. The ’123 Patent was examined by Primary United States Patent Examiner Kristy A. Haupt. During the examination of the ’123 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G16H 40/67; A61B 5/0205; A63B 24/0062; G06K 7/1413; and G06K 19/06028.

35. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the ’123 Patent to issue. In so doing, it is presumed that Examiner Haupt used her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Haupt had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the ’123 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the ’123 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Haupt.

36. The claims of the ’123 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011)

("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

37. The nominal expiration date for the claims of the '123 Patent is no earlier than August 6, 2032.

38. The '394 Patent was examined by Primary United States Patent Examiner Kristy A. Haupt. During the examination of the '394 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G16H 40/67; A61B 5/0205; A63B 24/0062; G06K 7/1413; and G06K 19/06028.

39. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '394 Patent to issue. In so doing, it is presumed that Examiner Haupt used her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Haupt had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the '123 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '394 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Haupt.

40. The claims of the ’394 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) (“[A]n expired patent is not viewed as having ‘never existed.’ Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286”) (internal citations omitted).

41. The nominal expiration date for the claims of the ’394 Patent is no earlier than September 18, 2032.

## ACCUSED INSTRUMENTALITIES

42. Upon information and belief, Defendant sells, advertises, offers for sale, uses, and/or otherwise provides various models of the Apple Watch including, but not limited to, the Apple Watch Series 11, SE (3rd generation), SE (2nd generation), Ultra 3, Series 10, Ultra 2, Series 9, Ultra and Series 8, and any previous Apple Watch models Defendant had in inventory and sold or caused to be sold on or after May 30th, 2023, (the “Apple Watch Accused Instrumentalities”) which infringe at least Claims 1-5, 9-14, 19 and 20 of the ’123 Patent, and various models of the Apple iPhone including, but not limited to, the Apple iPhone 17, 17 Air, 17 Pro, 17 Pro Max, 16e, 16 Plus, 16 Pro, 16 Pro Max, 15 and 15 Plus, and any previous Apple iPhone models Defendant had in inventory and sold or caused to be sold on or after February 18th 2025, (the “Apple iPhone Accused Instrumentalities”) which infringe at least Claims 1-3, 5-8, 11-14 and 16-18 of the ’394 Patent.

**COUNT ONE**
**(Infringement of United States Patent No. 11,664,123)**

43. Plaintiff refers to and incorporates the allegations in Paragraphs 1-42, the same as if set forth herein.

44. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq*.

45. Defendant has knowledge of its infringement of the ’123 Patent, at least as of the service of the present complaint.

46. Accordingly, Defendant has infringed and continues to infringe, the ’123 Patent in violation of 35 U.S.C. § 271. Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claims 1-5, 9-14, 19 and 20 of the ’123 Patent by making, using, importing, selling, and/or offering for sale (as identified in the Claim Chart attached hereto as **Exhibit C**) the Apple Watch Accused Instrumentalities.

47. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims, including at least Claims 1-5, 9-14, 19 and 20 of the ’123 Patent, by having its employees internally test and use the Apple Watch Accused Instrumentalities.

48. The service of this Complaint, in conjunction with the attached Claim Chart (**Exhibit C**) and references cited, constitutes actual knowledge of infringement as alleged here.

49. **Exhibit C** includes at least one chart comparing the exemplary Claims 1-5, 9-14, 19 and 20 of the ’123 Patent to an exemplary Accused Apple Watch Instrumentality. As set forth in this chart, the Apple Watch Accused Instrumentalities practice the technology claimed by the ’123 Patent. Accordingly, the Apple Watch Accused Instrumentalities incorporated in this chart satisfy all elements of exemplary Claims 1-5, 9-14, 19 and 20 of the ’123 Patent.

50. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of **Exhibit C**.

51. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

52. Defendant's actions complained of herein will continue unless Defendant is enjoined by this Court.

53. The '123 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

54. A copy of the '123 Patent is attached hereto as **Exhibit A**.

55. By engaging in the conduct described herein, Defendant has injured Plaintiff and is liable for infringement of the '123 Patent, pursuant to 35 U.S.C. § 271.

56. Defendant has committed these acts of literal infringement, or infringement under the doctrine of equivalents of the '123 Patent, without license or authorization.

57. As a result of Defendant's infringement of the '123 Patent, injured Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

58. Plaintiff is in compliance with 35 U.S.C. § 287.

59. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement of the '123 Patent up until the date that Defendant ceases its infringing activities.

## COUNT TWO
## (Infringement of United States Patent No. 12,230,394)

60. Plaintiff refers to and incorporates the allegations in Paragraphs 1-59, the same as if set forth herein.

61. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq*.

62. Defendant has knowledge of its infringement of the ’394 Patent, at least as of the service of the present complaint.

63. Accordingly, Defendant has infringed and continues to infringe, the ’394 Patent in violation of 35 U.S.C. § 271. Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claims 1-3, 5-8, 11-14 and 16-18 of the ’394 Patent by making, using, importing, selling, and/or offering for sale (as identified in the Claim Chart attached hereto as **Exhibit D**) the Apple iPhone Accused Instrumentalities.

64. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims, including at least Claims 1-3, 5-8, 11-14 and 16-18 of the ’394 Patent, by having its employees internally test and use the Apple iPhone Accused Instrumentalities.

65. The service of this Complaint, in conjunction with the attached Claim Chart (**Exhibit D**) and references cited, constitutes actual knowledge of infringement as alleged here.

66. **Exhibit D** includes at least one chart comparing the exemplary Claims 1-3, 5-8, 11-14 and 16-18 of the ’394 Patent to an exemplary Apple iPhone Accused Instrumentality. As set forth in this chart, the Apple iPhone Accused Instrumentalities practice the technology claimed by the ’394 Patent. Accordingly, the Apple iPhone Accused Instrumentalities incorporated in this chart satisfy all elements of exemplary Claims 1-3, 5-8, 11-14 and 16-18 of the ’394 Patent.

67. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of **Exhibit D**.

68. Plaintiff is entitled to recover damages adequate to compensate for Defendant’s infringement.

69. Defendant's actions complained of herein will continue unless Defendant is enjoined by this Court.

70. The '394 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

71. A copy of the '394 Patent is attached hereto as **Exhibit B**.

72. By engaging in the conduct described herein, Defendant has injured Plaintiff and is liable for infringement of the '394 Patent, pursuant to 35 U.S.C. § 271.

73. Defendant has committed these acts of literal infringement, or infringement under the doctrine of equivalents of the '394 Patent, without license or authorization.

74. As a result of Defendant's infringement of the '394 Patent, injured Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

75. Plaintiff is in compliance with 35 U.S.C. § 287.

76. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement of the '394 Patent up until the date that Defendant ceases its infringing activities.

## DEMAND FOR JURY TRIAL

77. iScan2D, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to:

(a) Enter judgment for Plaintiff on this Complaint on all cases of action asserted herein;

(b) Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receives notice of

the order from further infringement of United States Patent Nos. 11,664,123 and 12,230,394 (or, in the alternative, awarding Plaintiff running royalty from the time judgment going forward);

(c) Award Plaintiff damages resulting from Defendants infringement in accordance with 35 U.S.C. § 284;

(d) Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

Dated: November 7, 2025

Respectfully Submitted,

/s/ *René A. Vazquez*
René A. Vazquez
Virginia Bar No. 41988
**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
rvazquez@dnlzito.com
(703) 989-2244

Joseph J. Zito
**DNL Zito**
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
rvazquez@dnlzito.com
(202) 466-3500

**COUNSEL FOR PLAINTIFF**